AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA N. Rue)

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br><br>Blake Rezabek<br><br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)  Case No.  19-1317-m<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   November 2015 through July 2016   in the county of           Montgomery           in the

     Eastern      District of      Pennsylvania     , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit wire fraud |

This criminal complaint is based on these facts:
See Affidavit, attached.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Adam Sucheski, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 1, 2019

_____
*Judge's signature*

City and state:        Philadelphia, PA

Thomas J. Rueter, U.S. Magistrate Judge
*Printed name and title*

19-1317-m

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR A COMPLAINT AND AN ARREST WARRANT

I, Adam Sucheski, being duly sworn, state:

### Introduction

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI"), currently

assigned to the Philadelphia Division's Fort Washington Resident Agency, duly appointed

according to law and acting as such.  I have been a Special Agent since 2006, and I have

conducted numerous investigations into financial crimes, including mail fraud, bank fraud, wire

fraud, and securities fraud.  I have also attended training courses regarding methods and

techniques for disguising, converting, and transmitting the proceeds of illegal activities. I have

also received training regarding the seizure and forfeiture of assets derived from fraud schemes.

2.    This case involves the investigation of BLAKE REZABEK (REZABEK) and

others known and yet unknown for internet fraud related offenses.  As set forth below,

REZABEK committed the aforementioned illegal activity from his residence and other locations

in the Eastern District of Pennsylvania.

### Purpose of Affidavit

3.    I submit this Affidavit in support of an application for an arrest warrant for

BLAKE REZABEK.

4.    Based on the evidence described below, there is probable cause to believe that

REZABEK and others known and yet unknown conspired to commit a scheme to defraud

victims through use of the internet, in violation of 18 U.S.C. §§ 1349 (conspiracy to commit wire

fraud), and that there is probable cause for the issuance of an arrest warrant.

5.    The information in this Affidavit is based, among other things, on my own

investigation, and information from interviews, a cooperating witness, internet communications,

bank and other records, and other law enforcement officers.  I submit this Affidavit for the

limited purpose of establishing probable cause for the issuance of a complaint and warrant; therefore I have not recited every fact I know about this investigation.

### Internet Fraud Schemes

6.      Your affiant has learned the following about certain internet-based fraud schemes from his investigations, from his training and experience, and from other law enforcement officers.

7.      Your affiant has learned that certain fraudsters utilize a scheme known as the auto sale scam. The typical auto sale scam works as follows. The fraudster/seller places an advertisement on Craigslist or another internet based sales site offering a late model vehicle for an unusually low price. The victim/buyer contacts the fraudster/seller via email or VOIP (Voice Over IP) telephone and discusses the vehicle purchase. The fraudster/seller typically offers false protection from fraud or purports to be from a company such as CarFax or PayPal. The fraudster/seller also utilizes counterfeit marks of these companies in any communications with the buyer to appear legitimate. This lures the victim/buyer into a false sense of security. The victim/buyer agrees to purchase the vehicle, sight unseen, and is directed by the fraudster/seller to send funds via wire or deposit into an account. The funds are wired or otherwise deposited into an account with the promise of vehicle delivery shortly thereafter. The fraudster/seller never intends to deliver the vehicle and withdraws or directs the withdrawal of the funds from the account, often depleting the account. When the vehicle never arrives and the victim/buyer attempts to contact the fraudster/seller, they receive a disconnected message or no response at all.

### The Investigation

8.      Since in or around April 2016, your affiant has been investigating REZABEK for his involvement in an internet auto sale scam based in the Eastern District of Pennsylvania that

2

has ensnared a number of victims, including victims located in Denver, Colorado; Madison, Florida; and Wyoming, Michigan. The identity of each of the victims is known to your affiant. In each case REZABEK, who previously resided at 6201 Riverfront Drive, Royersford, Pennsylvania 19468 and now resides at 2205 Lexington Court, Eagleville, Pennsylvania 19403, or a co-conspirator, has posted an online advertisement for a vehicle, convinced another individual to act as an intermediary by providing the use of the intermediary's bank account in exchange for a fee, and has directed the victim to wire transfer or deposit the purchase price of the scam vehicle to the intermediary's bank account. In each case, after the funds are received by the intermediary in his bank account, REZABEK directed the intermediary to withdraw the funds, less the agreed upon fee, and to meet REZABEK at a predetermined location near the bank. REZABEK arrived at each meeting in his vehicle. REZABEK has never delivered the promised vehicles to any of his victims.

9.      In or around April 2016, your affiant learned about the Denver, Colorado victim through the Towamencin Township, Pennsylvania Police Department. Your affiant learned that the victim, V1, reported a fraud to her local police on or about February 29, 2016. V1 reported to the Denver Police that she observed an ad online approximately the prior week for a 2009 Dodge Ram pickup, reportedly located in Topeka, Kansas. V1 communicated with the purported seller and also received emails from CarFax to facilitate the sale. V1 agreed to purchase the vehicle for $8,000 and sent $4,000 via wire to Bank of America (BoA) account ending in '69 on February 23, 2016. An additional $4,000 was wired to the same account on February 24, 2016. The vehicle was never delivered and the purported CarFax representative ceased all communication with V1. The Denver Police were able to determine that Bank of America account ending in '69 was assigned to a resident of Lansdale, Pennsylvania.

3

10.     On or about June 29, 2016, your affiant interviewed the owner of account '69, referred to herein as cooperating witness #1 (CW#1). CW#1 provided the following information. He stated that he had met REZABEK at a party near Temple University in Philadelphia, Pennsylvania. REZABEK told CW#1 that he was looking for people to work with him. REZABEK told CW#1 that he already had a small group of people working with him. REZABEK indicated that CW#1 would make good money and that it was "an online business." CW#1 never received a clear answer from REZABEK as to the nature of the "online business." REZABEK told CW#1 that all CW#1 had to do was open one or more bank accounts and receive funds in the account. Once the funds were in the account, CW#1 would withdraw cash and then provide the cash to REZABEK, less a 10% commission for his work. CW#1 agreed, and he subsequently opened the Bank of America account ending in '69 into which Denver victim V1 later wired the fraud proceeds. CW#1 indicated that he met with REZABEK and REZABEK's girlfriend between eight and ten times. Each time CW#1 met with REZABEK, he would receive a call from REZABEK advising that the funds were in the account. CW#1 would go to the bank and withdraw the cash, less 10%, and then meet REZABEK near the bank. REZABEK drove a dark colored Infiniti. CW#1 would get in the back of the car and hand the cash to REZABEK, who was driving.[1]  REZABEK's girlfriend was usually sitting in the passenger seat.

11.     Your affiant has confirmed that REZABEK did in fact own an Infiniti, bearing

---

[1] In July 2016, your affiant identified an additional victim of REZABEK's scheme. In or around February 2016, a Kitcap County, Washington victim lost $10,000 by depositing the money into CW#1's account for a vehicle which was never delivered. When contacted by Washington State law enforcement, CW#1 initially confirmed that he had sold the vehicle then changed his story and said he was working for a friend. CW#1 did not identify the friend to Washington State law enforcement but told them at the time that funds were deposited into his account so he could re-ship electronics. Your affiant has not confronted CW#1 with this information.

CW#1 has outstanding local charges for drugs and theft, and he has prior convictions for theft, unauthorized use of a motor vehicle, drugs and DUI.

4

VIN JN1CV6AR6DM354900.  Records obtained from PNC Bank show that REZABEK paid off

a loan on this vehicle in May 2016.  The PA license plate formerly displayed on the Infiniti has

been transferred to a Mercedes owned by REZABEK (REZABEK MERCEDES).

12.    In or around May 2016, your affiant learned about the Madison, Florida victim, V2,

through Bucks County Pennsylvania Detectives.  Your affiant learned that V2, located in

Madison, Florida, contacted Madison Police and reported that she had responded to a Craigslist

advertisement for a 2006 Ford pickup truck, listed for sale for $3,000 on February 10, 2016.  V2

emailed the seller and received a telephone number to call (888-779-9492), which purportedly

was an employee of the eBay Financial department.  However, this telephone number was not,

and is not, assigned to eBay.  According to V2, the false eBay employee provided a Wells Fargo

bank account ending in '9601 for making the payment.  On February 12, 2016, V2 sent $3,000 to

the '9601 Wells Fargo account for the purchase of the truck.  The truck was never delivered, and

all communication with the seller and purported eBay employee ceased.  The Madison Police

were able to determine identify the Ottsville, Pennsylvania Wells Fargo account holder, known

to this affiant and identified herein as Cooperating Witness #2 (CW#2).  A check of the '9601

account's records indicated that V2's $3,000 had been deposited in the account, and that

following the $3,000 deposit CW#2 withdrew $2,850 from the account.

13.    Your affiant interviewed CW#2.[2]  CW#2 provided the following information.  He

advised that he had met REZABEK through a friend and that REZABEK offered him a job with

his "online business."  REZABEK indicated that he was involved in the purchase and sale of

BitCoins and that all CW#2 had to do was open bank accounts and receive funds.  Once the

funds were received, CW#2 would withdraw the funds in cash, less a commission, and provide

---

[2] CW#2 has convictions for DUI, resisting arrest, drugs, and criminal mischief.

the cash to REZABEK. CW#2 advised that before he met with REZABEK, he would receive a call from REZABEK, advising that the funds were in the account. CW#2 would go to the bank and withdraw the cash, less his commission and then meet REZABEK near the bank. REZABEK was driving a dark silver car, possibly an Acura. CW#2 would get in the back of the car and hand the cash to REZABEK who was driving. A person identified as REZABEK's girlfriend was usually seated in the front passenger seat.

14.     Your affiant has also learned from Pennsylvania local law enforcement officers that during an interview, CW#2 told officers that REZABEK uses a bunch of kids' accounts through which he funnels/launders money.

15.     Your affiant learned about the Wyoming, Michigan victim, V3, from a detective from the Wyoming, Michigan Police Department. The detective advised that on June 16, 2016, he received a complaint from V3 regarding an auto sales scam. V3 reported that he had located an advertisement on Craigslist for a 2010 Toyota Rav 4 for sale for $5,000 and communicated with the seller via email and text message. V3 received emails and reports from CarFax that were ultimately determined not to be legitimate. V3 was directed to send $5,000 to Bank of America account ending '63 and await delivery. On June 8, 2016, V3 sent $5,000 to account as directed. The vehicle was never delivered.

16.     On or about July 19, 2016, your affiant interviewed Cooperating Witness Three (CW#3). CW#3 was identified by the Wyoming, Michigan Police Department as an intermediary in REZABEK's scheme. CW#3 provided the following information. CW#3 opened bank accounts at Wells Fargo Bank and at Bank of America in order to help out his friend "BLAKE," who was selling Bitcoins. CW#3 was shown a photograph of REZABEK, and CW#3 confirmed that this was his friend "Blake." CW#3 identified REZABEK's telephone

number as 610-306-5906. CW#3 met REZABEK through word of mouth from friends in Lansdale, Pennsylvania. REZABEK told CW#3 to open bank accounts in order to receive money from people purchasing Bitcoins. CW#3 opened the accounts, and then passed the account information to REZABEK. CW#3 would be notified by REZABEK via text message when funds were in the account. REZABEK would send a picture message with a deposit slip. CW#3 would then be directed go to the bank and withdraw the cash, less his commission and take the cash to REZABEK. CW#3 estimates that he completed these transactions three times, and each time the cash deposit was $5,000. CW#3 met with REZABEK in person near the bank, shortly after the cash was withdrawn. REZABEK drove a white Mercedes each time, and REZABEK's girlfriend was with him. CW#3 would get in the Mercedes, hand REZABEK the cash, and then he would exit the car. CW#3 stated that the Bank of America account still had $5,000 in it, which had been frozen. REZABEK wanted the cash from the account and directed CW#3 to contact the bank and figure out how to release the funds.

17. CW#3's involvement as an intermediary in REZABEK's scheme had been confirmed through FBI physical surveillance of REZABEK. On or about May 23, 2016, agents observed REZABEK use the REZABEK MERCEDES to travel from his residence to Montgomeryville, Pennsylvania and meet with CW#3. CW#3 was observed to exit his vehicle, holding a Bank of America cash envelope and enter the rear driver side seat of the REZABEK MERCEDES. CW#3 exited the REZABEK MERCEDES a few moments later and both vehicles departed the area.

18. Your affiant has identified additional victims who were defrauded by REZABEK through the use of CW#3. On or about June 3, 2016, a Waynesville, North Carolina victim, V4, wired $5,000, and on June 8, 2016, a Grand Rapids, Michigan victim, V3, wired $5,000 to

CW#3 for vehicles which were never delivered.  Your affiant has received and reviewed the bank records for CW#3's Bank of America and Wells Fargo accounts and corroborated CW#3's involvement as an intermediary in REZABEK's scheme.  The records depict $5,000 deposits, followed by cash withdrawals.

19.    Your affiant also conducted a consent search on CW#3's telephone and recovered text messages from contact "BLAKE," telephone 610-306-5906, which is known to law enforcement to be the telephone number for REZABEK. The messages notified CW#3 when deposits were received in CW#3's Bank of America and Wells Fargo accounts.  The messages provided bank names (Bank of America or Wells Fargo) and amounts, URLs (*i.e.*, internet addresses), and addresses where the deposits were made.  A review of the messages showed $30,000 in fraudulent transactions was deposited into CW#3's Bank of America account between June 3, 2016 and June 14, 2016.

20.    Your affiant corroborated the deposit locations noted in the text messages with suspected fraud victims reporting fraud to the FBI's Internet Crime Complaint Center (IC3).  The IC3 is a central repository for online fraud victims to submit information to the FBI which can be collated and searched for connections to individual suspects or organized theft groups.  In this instance, your affiant confirmed two transactions as being reported to IC3 by fraud victims. The Waynesville, North Carolina and Wyoming, Michigan frauds noted above are also corroborated by the messages and deposit slips recovered from CW#3's telephone.  Subpoenaed records for telephone number 610-306-5906 also corroborate the communication between CW#3 and that telephone where the links to deposits slips were sent to CW#3 by the person using that telephone.  The records indicate that 610-306-5906 is associated with an Apple iPhone bearing IMSI: 310410759231213, SIM CARD: 89014103257592312133.

21.     On or about July 25, 2016, your Affiant directed CW#3 to contact REZABEK about a previous deposit via text message.  Through a text message, CW#3 told REZABEK that a $5,000 deposit was received into CW#3's Bank of America account and that the funds were frozen by Bank of America for potential fraud.  REZABEK responded to CW#3 by text message, directing him to contact the bank to try and get the funds unfrozen.

22.     On or about August 2, 2016, your Affiant provided $2,000 to CW#3 who contacted REZABEK and told him that the bank had released some of the funds from the account. REZABEK told CW#3 that he would meet CW#3 to get the money.  CW#3 and REZABEK agreed to meet in the 1500 block of Sumneytown Pike, Lansdale, Pennsylvania.  On that date, FBI surveillance observed REZABEK enter the parking lot of the 1500 block of Sumneytown Pike driving the REZABEK MERCEDES.  CW#3 was observed entering the REZABEK MERCEDES and speaking with REZABEK.  A few minutes later, CW#3 exited the vehicle and REZABEK departed alone in the vehicle.  CW#3 later told your affiant that while in the vehicle REZABEK asked CW#3 why the full $5,000 was not released and urged CW#3 to call the bank about the account.  CW#3 advised that he would not be able to do that at that time.

23.     In or around June 2016, your affiant caused a search of the FBI Internet Crime Complaint Center (IC3) for complaints against REZABEK and/or his associates.  A preliminary analysis of search results determined that victims have submitted at least 42 complaints involving losses connected to REZABEK.  The search also identified additional would-be victims who suffered no financial loss.  IC3 contained complaints linked to REZABEK from at least 16 different states throughout the United States as well as overseas.

24.     Your Affiant received bank records for a number individuals who either have admitted an association or appear to be associated with REZABEK as noted above.

9

REZABEK's girlfriend, CW#1, CW#2, and CW#3, as well as others known to your Affiant appear to have received and cashed out funds at the direction or influence of REZABEK. All of these individuals live in and around the Philadelphia area. The bank records for the individuals are consistent with the known fraud, showing average deposits of $5,000, followed by quick cash withdrawals from the accounts.

25.      A summary of cash deposits and withdrawals from the identified bank accounts at Bank of America (BOA) and Wells Fargo (WF) used by REZABEK and his identified intermediaries is as follows:

| Name | Dates | Cash In | Cash Out | Bank |
|------|-------|---------|----------|------|
| Blake Rezabek | 11/1/2015 - 2/28/2016 | $56,365 | $45,337 | WF |
| Blake Rezabek | 9/22/2015 - 7/5/2016 | $116,450 | $108,829 | PNC |
| CW#1 | 2/1/2016 - 3/1/2016 | $39,960 | $38,916 | BOA |
| CW#2 | 2/1/2016 - 4/1/2016 | $34,530 | $30,526 | BOA |
| CW#2 | 2/1/2016 - 3/30/2016 | $14,482 | $13,367 | PNC |

26.   On May 8, 2017, your Affiant received the following information from an identified victim in Las Vegas, Nevada, V5, who reported being defrauded in the purchase of a food trailer for $7,200 in response to an online ad. V5 responded to the ad and received an email from mareyamayal@gmail.com between November 24, 2015 and December 8, 2015. "Mary" purported to be a recently divorced person now living in British Columbia, Canada and working for the Army. "Mary" indicated that if V5 could not come to Canada to pick up the trailer, the trailer could be shipped and would utilize an intermediary, Black Motor Corp., 702 E D St, Tacoma, Washington 98421 to receive payment. The last line in the email on November 24,

2015, states "P.S. Please don't bother them if you don't have cash in hand and ready to buy the trailer!" A contract was provided and executed by the victim on November 30, 2015 through "Michael Penn." The victim reported receiving and signing a contract with Black Motor Corp dba Blake A. Rezabek Inc. Your affiant has received a copy of this contract.

27.     V5 then utilized the information from the contact information provided by "Mary" to obtain a cashier's check payable to BLAKE REZABEK for $3,600 dated December 1, 2015 drawn on V5's Wells Fargo account. In an email dated December 4, 2015, "Mary" indicated that the payment was received by check and that this type of payment could not be accepted. "Mary" wrote "I suggest you to make the payment like they told you not like you want." As a result, on December 1, 2015, V5 deposited $3,600 cash into a Wells Fargo account ending '5746.

28.     Your Affiant has obtained and reviewed the Wells Fargo account ending '5746, which indicated that it was opened on November 17, 2015 by BLAKE REZABEK, 6201 Riverfront Drive, Royersford, Pennsylvania 19468. REZABEK listed his employer as Lehigh Dairies. Pursuant to a subpoena, your Affiant has received and reviewed the employment records for REZABEK at Lehigh Dairies. REZABEK worked for the company between June 8, 2008 and August 7, 2011 with a wage of $10 to $11 an hour, with multiple layoffs and rehires (consistent with summer work). Lehigh Dairies indicated that in 2011 a W-2 was issued to REZABEK for $4,037.

29.     The deposit noted by V5 is reflected in REZABEK's Wells Fargo bank account. In addition, between November 25, 2015 and February 18, 2016, the '5746 account received $45,365 in deposits (including $75 deposited by REZABEK upon account opening) and indicated withdrawals of $45,337. The account remained open until March 23, 2016 with no

11

other activity before it was closed by Wells Fargo for fraud. REZABEK maintained a bank account with Diamond Credit Union at the time the funds were deposited into the Wells Fargo account. The Diamond Credit Union account activity is consistent with daily life activities – gas, food purchases, and the like.

## Conclusion

30.     For the foregoing reasons, there is probable cause to believe that Blake Rezabek is involved in a conspiracy scheme to defraud using interstate wires, in violation of 18 U.S.C. § 1349.

ADAM SUCHESKI
Special Agent
Federal Bureau of Investigation


Sworn to and subscribed
before me this_____ day of July 2019.

HONORABLE THOMAS J. RUETER
United States Magistrate Judge

12